[Civ. No. 507.   First Appellate District.—December 5, 1908.]

## A. H. SEEBACH, Respondent, v. CHARLES J. KUHN, Appellant.

BUILDING CONTRACT—EARTHQUAKE CLAUSE—DESTRUCTION OF BUILDING—RULE OF SUBSTANTIAL PERFORMANCE INAPPLICABLE.—The general rule of substantial performance, as between the owner of the building and the contractor, under a valid contract, that, if the building is substantially completed, the contractor may recover his payments, less the sum required perfectly to complete the contract, does not apply when the contract contains a valid fire and earthquake clause, providing expressly that in case of loss or destruction of the building by fire or earthquake, the owner shall lose the installments paid, and the contractor shall lose installments not then due; and when, under such contract, the building was destroyed by the earthquake of April 18, 1906, before the completion and acceptance of the building, though an expense of only $39 was required to complete it, the contractor cannot recover the completion and final payments, less said sum, or at all.

ID.—PLEADING—ACTS OF PREVENTION, ACCEPTANCE, OR WAIVER.—If the plaintiff relies upon any acts of prevention of performance by the owner or his architect, or any acts showing an acceptance of the building, or waiver of full performance before the loss of the building, he must plead the same.

ID.—OWNER NOT RESPONSIBLE FOR ACTS OF INDEPENDENT CONTRACTOR.— The owner is not responsible to the plaintiff as a contractor for the acts of an independent contractor, hindering and delaying his full performance before the loss occurred, when the contract provided for such contingency, by adding to the time in which the contractor was allowed to complete the work.

ID.—DELAY BY ARCHITECT—FINDING AGAINST EVIDENCE.—*Held,* that a finding that the performance by the plaintiff was delayed by the architect of the defendant owner is unsupported by any evidence.

ID.—DIFFERENT JUDGMENT ORDERED UPON SPECIAL VERDICT.—When the special verdict of the jury shows that the contract set up in the answer was executed by the parties and that floor entrances therein required were not constructed before the building was totally destroyed by the earthquake, *held,* that the defendant is entitled on the special verdict to have the judgment for the plaintiff reversed, with directions to the trial court to enter judgment for defendant upon the special verdict.

APPEAL from a judgment of the Superior Court of Santa Clara County, and from an order denying a new trial. M. H. Hyland, Judge.

The facts are stated in the opinion of the court.

S. F. Leib, for Appellant.

Wm. P. Veuve, for Respondent.

HALL, J.—This action was brought by a contractor to recover the last two payments, amounting to $1,465, under a building contract, he claiming to have completed the work contracted for, the third payment being payable on completion of the work, and the fourth and last payment thirty-five days thereafter.

The action was tried with a jury, and upon their special and general verdict judgment was entered for plaintiff for the sum of $1,426. This is an appeal by defendant from the judgment and the order denying his motion for a new trial.

The building was to be erected by several independent contractors, each agreeing, by a separate contract with the owner (defendant) to do specified portions of the necessary work.

The contract between plaintiff and defendant was entirely in writing, signed and executed by them and duly filed, with the plans and specifications, in the recorder's office before the work was commenced.

By the terms of the contract plaintiff was to furnish all the labor and materials required, and perform and complete in a workmanlike manner, all brick work, all granite work, all concrete and artificial stone work. A part of this work, as found by the special verdict, consisted of the laying and constructing of floor entrances to the building, to contain an area of seventy-eight square feet, and to consist of the best artificial stone work laid upon a concrete foundation.

The specifications relating to this part of the work are as follows:

"The floor of entrances: To be of the best artificial stone work cut up in suitable pattern, and the top finish to be ¾″ thick of clean washed sharp sand and Alsens cement equal parts. The concrete to be ¾″ thick of one part of said cement to seven parts of clean washed sharp sand and gravel; prepare the ground by filling and floating with water, and tamping so as to make a first class job."

The evidence showed without contradiction and the jury found that no part of this artificial stone and concrete foun-

dation for the said floor entrances was ever constructed, except that the ground had been prepared for such work, but that on the eighteenth day of April, 1906, the building so far as it had been completed was wholly destroyed by an earthquake.

The jury further found that the cost of finishing the floor entrances in accordance with the contract would be $39.

The jury also found that plaintiff's contract with defendant, and the work to be performed by plaintiff thereunder, was substantially completed before the earthquake, but had never been accepted by the architect or owner.

The contract between plaintiff and defendant is set out in the answer of defendant, and is found by the jury to be the contract under which plaintiff did the work in question. The contract provided that "In case said work herein provided for should, before completion, be wholly destroyed by fire, defective soil, earthquake, or . . . then the loss occasioned thereby shall be sustained by the owner to the extent that he has paid installments thereon, or that may be due under the fifth clause of this agreement; and the loss occasioned thereby and to be sustained by the contractor, shall be for the uncompleted portion of said work upon which he may be engaged at the time of the loss, and for which no payment is yet due under said fifth clause of this contract.''

The fifth clause of the contract provided that the owner agreed ''in consideration of the performance of this agreement by the contractor'' to pay him the contract price of $2,929 in four installments, viz., $732 when the first story was built to receive the second story floor joists; $732 when the brickwork was ready to receive the second story ceiling joists; ''third, a payment of $732 when all the work under this agreement has been completed and accepted by the owner and architect; and fourth, a last or final payment of $733 thirty-five days after the date of said acceptance.''

Appellant contends that under the provisions of the earthquake clause of the contract plaintiff is not entitled to the third and fourth payments, for the reason that all the work contracted to be done was not completed or accepted when the building was totally destroyed by earthquake.

Respondent, on the other hand, contends that notwithstanding the language of the contract, plaintiff is entitled to

recover the last two installments of the contract price, less damages for the unperformed work, upon the theory that the work contracted to be done was substantially completed before the earthquake, and that the finding of substantial completion by the jury is conclusive, notwithstanding that the jury also found specifically what work was not in fact done.

Undoubtedly the rule is well established that in ordinary cases the contractor in a building contract may recover against the owner, notwithstanding that he has not strictly complied with his contract because of minor defects and imperfections, and even omissions, not willful or fraudulent. This rule is sometimes spoken of as the modern equitable doctrine of substantial performance. It rests for its justification upon the proposition that in such cases the owner has either accepted the benefit of the work of the contractor or, because of the nature of the transaction, he perforce receives such benefit to his property, and *may be protected from any actual pecuniary loss by a recoupment in damages* for deficiencies and imperfections. Oftentimes minor defects and imperfections occur in the construction or repair of buildings without intentional fault of the contractor. For such defects the owner may be readily made whole by an allowance of damages. So, too, under the mechanic's lien law it is provided that, for the purpose of filing liens a building shall not be held uncompleted because of trivial imperfections. (*Perry* v. *Quackenbush*, 105 Cal. 299, [38 Pac. 740] ; *Harlan* v. *Stufflebeem*, 87 Cal. 508, [25 Pac. 686] ; *Schindler* v. *Green*, 149 Cal. 752, [87 Pac. 626] ; *Branchi* v. *Hughes*, 124 Cal. 25, [56 Pac. 610] ; *Marchant* v. *Hayes*, 117 Cal. 670, [49 Pac. 840] ; *Santa Monica L. etc. Co.* v. *Hege*, 119 Cal. 376, [51 Pac. 555].)

But we do not think that the doctrine of substantial performance has any application to this case.

The defendant did not accept the work or enter into the use and possession of the building; he did not and cannot receive any benefit from the work done, and he cannot be made whole by any allowance for damages for incomplete performance. Each and all of the just and equitable principles upon which the doctrine of substantial performance rests are absent from this case. It manifestly is not a case where both parties may be protected from loss.

On the contrary, when the parties to the contract framed the fire and earthquake clause they had in mind a contingency under which one or both parties must suffer a loss. They deliberately undertook to provide how that loss should be borne. The contract that they made is perfectly lawful, and we know of no reason why courts should not give it effect according to its terms. (*Holmes* v. *Richet,* 56 Cal. 316, [38 Am. Rep. 54] ; *Hogan* v. *Globe Mutual Assn.,* 140 Cal. 610, [74 Pac. 153].) We have been cited to no case, and have found none, involving a contract providing how the loss shall be borne in case of the destruction, without the fault of either party, of the building or subject matter of the contract before completion of the work.

In the case of *Lord* v. *Wheeler,* 1 Gray (Mass.), 285, a contractor for the repair of a building had substantially completed the repairs when the building was destroyed by fire. The contractor was allowed to recover, but the court said, "And the precise ground upon which the plaintiff can recover in this case is that when the repairs upon the house were substantially done, and before the fire, the defendant, by his tenant, entered and occupied it, and so used and enjoyed the labor and material of the plaintiff." The ground of the recovery in this case is a striking illustration of what we have said is the foundation upon which the doctrine of substantial performance rests, viz., benefits accepted or received from the work and materials of the contractor.

In answer to certain questions submitted at the request of plaintiff the jury found that plaintiff was ready, able and willing to perform the omitted work before the earthquake, but was prevented from so doing by the acts of another independent contractor, and also by the act of the architect.

It is sufficient to say that no such issue was raised by the pleadings. Plaintiff nowhere alleged any matter of prevention, waiver or excuse for not performing, but in both counts of his complaint alleged that he had performed all the work he had contracted or been employed to do. Plaintiff cannot allege one cause of action, and recover by proving a different cause of action. (*Krido* v. *Phelps,* 145 Cal. 526, [78 Pac. 1044] ; *Nichols* v. *Randall,* 136 Cal. 431, [69 Pac. 26].)

If a litigant relies upon matter of waiver or estoppel to sustain his cause of action or defense he must plead such mat-

ter. (*Jerome* v. *Stebbins,* 14 Cal. 457; *Daley* v. *Russ,* 86 Cal. 114, [24 Pac. 867]; *Gillon* v. *Northern etc. Co.,* 127 Cal. 480, [59 Pac. 901]; *Rogers* v. *Kimball,* 121 Cal. 247, [53 Pac. 648]; *Dyer* v. *Scalmanini,* 69 Cal. 642, [11 Pac. 327]; *Clark* v. *Huber,* 25 Cal. 593; *Chapman* v. *Hughes,* 134 Cal. 641, [58 Pac. 298, 60 Pac. 974, 66 Pac. 982]; 9 Cyc. 727.)

As to the prevention by an independent contractor, we know of no principle of law that would make the owner responsible to plaintiff for the acts of such independent contractor. The contract itself contemplated that delays might be caused by the acts of other contractors, and provided that the time lost by such delays should be added to the time given plaintiff to complete his work.

Neither do we think that the evidence supports the finding that plaintiff was in fact delayed by any act of the architect. It clearly appears from the evidence given by plaintiff's own witnesses that the woodwork, which was being done by an independent contractor, had not progressed to that stage that the floor entrances could be properly laid. It appears that the store fronts should be put in before the floor entrances should be laid. The contractor for this work had not commenced on it, but was about ready to do so. In this connection it was shown that before this work could be done detail drawings should be furnished by the architect, and that they had not been prepared, but it nowhere appears that they would not have been ready whenever needed. In the nature of building operations, when the different classes of work are being done by different contractors, it will often happen that one contractor must wait until the work of another has been done. Delays arising from such cause are not a prevention or in any sense a delay for which the owner is chargeable. We do not think that the finding that the plaintiff was prevented from doing the omitted work before the earthquake by any act of the architect finds any support in the evidence.

As it appears from the finding of the jury that the parties executed the contract set forth in defendant's answer, which required plaintiff to construct the floor entrances, and that they were not constructed before the building was totally destroyed by earthquake, defendant was entitled to judgment upon the special verdict of the jury.

The judgment is reversed, with directions to the trial court to enter judgment for defendant.

Cooper, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 1, 1909.